## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

| | | |
|---|---|---|
| VIVIANA BAUTISTA, | § | |
| CRESENCIA BAUTISTA, and | § | |
| GUADALUPE BAUTISTA, Individually | § | |
| and as representative of | § | |
| HERMELINDA BAUTISTA, Deceased. | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. _____ |
| V | § | |
| | § | |
| HIDALGO COUNTY, HIDALGO | § | |
| COUNTY SHERIFF'S DEPARTMENT, | § | |
| HIDALGO COUNTY SHERIFF J.E. EDDIE | § | |
| GUERRA, DEPUTY DAVID GONZALEZ | § | |
| and DEPUTY JOSE GONZALEZ | § | |
| | § | |
| | § | |
| Defendants. | § | |

### PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs brings this 42 U.S.C. § 1983 excessive force and false arrest lawsuit against

HIDALGO COUNTY, HIDALGO COUNTY SHERIFF'S DEPARTMENT, HIDALGO

COUNTY SHERIFF J.E. EDDIE GUERRA, Hidalgo County Sheriff's Deputy DAVID

GONZALEZ,  and Hidalgo County Sheriff's Deputy JOSE GONZALEZ for violating their

Fourth, Eighth and Fourteenth Amendment rights.

### I.

### **PARTIES**

1.     Plaintiff VIVIANA BAUTISTA is an adult Texas resident and resides in Hidalgo County, Texas.  She is the daughter of Plaintiffs Guadalupe Bautista and Hermelinda Bautista, and the grand-daughter of Plaintiff CRESENCIA Bautista.

2.     Plaintiff CRESENCIA BAUTISTA is a Texas resident and resides in Hidalgo County, Texas.

3.     Plaintiff GUADALUPE BAUTISTA is a Texas resident and resides in Hidalgo County, Texas.

4.     Plaintiff HERMELINDA BAUTISTA, now deceased, was a Texas resident who resided in Hidalgo County, Texas, and she is represented herein by her surviving spouse, GUADALUPE BAUTISTA.  Her death was unrelated to the conduct subject of this cause of action.

5.     Defendant, HIDALGO COUNTY, is a local governmental agency organized and exiting under the law of the State of Texas.  Service of process may be satisfied by serving the Hidalgo County Judge, Richard Cortez, at 100 E. Cano, Second Floor, Edinburg, Texas 78539.  *Service is hereby requested at this time.*

6.     Defendant, HIDALGO COUNTY SHERIFF'S DEPARTMENT, is a law enforcement agency operated by Hidalgo County, Texas, which may be served with process by service to Hidalgo County Sheriff, J.E. "Eddie" Guerra, at 711 El Cibolo Rd, Edinburg, TX 78541.  *Service is hereby requested at this time.*

7.     Defendant, HIDALGO COUNTY SHERIFF, JE. E EDDIE GUERRA, is the

Sheriff of Hidalgo County, and may be served with process by service to Hidalgo County Sheriff, J.E. "Eddie" Guerra, at 711 El Cibolo Rd, Edinburg, TX 78541. *Service is hereby requested at this time.*

8.    DAVID GONZALEZ is a peace officer and deputy for the Hidalgo County Sheriff's Department. He is sued in his individual capacity, and may be served at the Hidalgo County Sheriff's Office, 711 El Cibolo Rd, Edinburg, TX 78541. He was acting under color of law at all relevant times. *Service is hereby requested at this time.*

9.    JOSE GONZALEZ is a peace officer and deputy for the Hidalgo County Sheriff's Department. He is sued in his individual capacity, and may be served at the Hidalgo County Sheriff's Office, 711 El Cibolo Rd, Edinburg, TX 78541. He was acting under color of law at all relevant times. *Service is hereby requested at this time.*

**II.**

**JURISDICTION AND VENUE**

10.    As this suit is brought pursuant to 42 U.S.C. § 1983, this Court has federal question jurisdiction. This Court has general personal jurisdiction over Defendants as they reside and/or works within the McAllen Division of the Southern District of Texas.

11.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the events or omissions giving rise to Plaintiffs' claims occurred in Hidalgo County, Texas, which is within the Southern District and McAllen Division.

**III.**

## FACTS

12.     On May 3, 2017, at about 11:00 p.m., Isamar Bautista (sister of Plaintiff

Viviana Bautista), was upset because her parents purchased a vehicle that she did not

want and was arguing with her mother Hermelinda.  Viviana Bautista then got in the

middle of them to prevent her sister from hitting their mother.  Isamar grabbed Viviana's

hair and pulled her down, so Viviana held Isamar down by her shoulders until she calmed

down.  Isamar then wanted to leave the family home, but her father Guadalupe Bautista

was not going to allow her to leave.  Isamar then call the Sheriff's Office.   Guadalupe

Bautista did not physically restrain Isamar, but only verbally told her she could not leave

home.  Out of respect for her father and old-fashioned traditions, although an adult,

Isamar felt that she could not leave the home against her father's will without a police

escort.

13.     Soon thereafter, the Hidalgo County Sheriff's Deputies David Gonzalez and

Jose Gonzalez arrived at the Bautista home, a trailer house in rural Hidalgo County.

Isamar went to talk to them to explain that she wanted to leave the home.  The Deputies

noticed blood near Isamar's ear, but Isamar explained that she had an ear infection.

Isamar was not seeking to press charges on anyone for anything; she just wanted to leave.

14.     After talking to Isamar, and while Isamar waited outside the home, both

Deputies entered the Bautista home without consent, probable cause or exigent

circumstances.  Deputy Jose Gonzalez asked to speak to Viviana.  Viviana was sitting on

the couch in between her parents, and Viviana responded " about what?"  The Deputy then told her "are you going to talk or not? Stop with your attitude." Viviana responded that it depended what Isamar had told him.

15.     The Deputy then ordered Viviana to stand up and he then placed asked handcuffs on Viviana and started pushing her out the front door of the home.

16.     Guadalupe Bautista saw how Viviana was being treated by Deputy Jose Gonzalez, so stood up from the couch to ask what was happening when suddenly and unexpectedly Deputy David Gonzalez pushed him back down into his seat on the couch.

17.     Guadalupe Bautista then got up again to ask why his daughter was being arrested and put his hand on Deputy Gonzalez to get his attention.  He told Deputy Gonzalez that Viviana was a female and that she should not be mistreated that way. Deputy David Gonzalez, positioned behind Guadalupe, then knocked Guadalupe down to the floor.  At the same time, Deputy Jose Gonzalez suddenly and unexpectedly shoved Viviana out the door, immediately turned and forcibly pushed down the elderly 83 year old Cresencia Bautista who was next to the couch,  and then went after Guadalupe who had already been taken down on the floor by Deputy David Gonzalez.  Guadalupe Bautista had only stood up to ask what was going on with his daughter and was already on the floor and controlled by Deputy David Gonzalez,  when Deputy Jose Gonzalez unnecessarily pepper sprayed him on the face and in his eyes.  Deputy Jose Gonzalez, who weighs well over 200 lbs, knelt on Guadalupe's back, causing him pain and suffering

in addition to that caused by the pepper spray.  He was then placed in Deputy David Gonzalez' unit and charged with Interfering with Public Duties and Resisting Arrest.

18.     Seeing her husband screaming from affects of the pepper spray, Plaintiff Hermelinda Bautista sought to comfort her husband and tell him to relax.  She approached the patrol car where Guadalupe was placed and put her hand on the window of the patrol unit to tell him to calm down.  Deputy Jose Gonzalez then tells Deputy David Gonzalez to arrest Hermelinda for Interfering with Public Duties.  Deputy David Gonzalez Retrained Hermelinda with her arms up behind her back, despite her pleas to let her go, causing such pain that she ultimately fainted.

19.     Viviana Bautista was on the ground at the foot of the porch steps where she had been pushed to by Deputy Jose Gonzalez.  She could not get up from the ground because of pain to her back, until the two deputies came over and pulled her up by her arms while still handcuffed.   She was placed in Deputy Jose Gonzalez' patrol car. From inside the patrol unit, Viviana could see that the deputies were holding her mother Hermelinda Bautista's arms behind her back and she could hear her mother telling them to please release her arms a little.  Viviana called Deputy Jose Gonzalez over to her by tapping on the door and when the deputy opened the door she placed her legs out of the car and asked him what was wrong with her mother.  He told he did not know and told her twice to put her legs back inside the patrol unit or she would get pepper sprayed.  She refused because she wanted to see what was happening to her mother. Deputy Jose

Gonzalez then pepper sprayed Viviana's face while she was still handcuffed.  Viviana did not comply with his demand only out of her concern for her mother. Viviana did not use force against the officer, did not exhibit furtive gestures, or otherwise pose a risk to the Deputy when she was pepper sprayed.  Once  she was pepper sprayed she moved her legs back into the vehicle.  She was charged with Assault and Resisting Arrest.  In the patrol unit and suffering the pain of the pepper spray, Viviana was able to remove her watch and remove the handcuff from her wrist only so that she could rub her eyes which she found out made the pepper spray effect worse.  She felt that she could not breathe so she knocked on the door and when Deputy opened the door he saw that she had removed the handcuffs so he placed them back on her.  She did not want to be placed back in the vehicle as it was hot and there was no air conditioning, so she sat on the ground.  The Deputies then picked her up and placed her in the back of the vehicle.

20.    Both Hermelinda Bautista, who had lost consciousness when restrained, and Cresencia Bautista, whose right arm was broken and dangling from being pushed by the Deputy, were taken for emergency medical treatment in an ambulance.

21.    On or about May 7, 2017, Viviana, Hermelinda and Cresencia gave statements to the Internal Affairs Division of the Hidalgo County Sheriff's Office complaining of mistreatment by the two Deputies.  Guadalupe could not make time from work to make his statement to Internal Affairs.  Ultimately, the administrative Internal Affairs Investigation was not able to prove or disprove the allegations of police

misconduct.

22.     No charge or arrest was ultimately made in the case of Hermelinda Bautista.
She passed away due to cancer in 2018, prior to the criminal charges going to trial against
her husband Guadalupe and daughter Viviana.

23.     On or about October 30, 2018, Viviana Bautista was acquitted by Jury of
Assault and Resisting Arrest.

24.     On or about October 30, 2018, Guadalupe Bautista was acquitted by Jury of
Resisting Arrest.

25.     On or about November 6, 2018, the charge of Interfering With Public
Duties against Guadalupe Bautista was dismissed by the State in the interest of justice.

26.     Both Viviana and Guadalupe incurred bail bond fees and attorney fees to
deal with the false criminal charges.

## IV.

## CAUSES OF ACTION

### A.  VIVIANA BAUTISTA - FALSE ARREST

27.     The factual allegations contained in all of the paragraphs of this Complaint are
hereby incorporated and re-alleged for all purposes and incorporated herein with the same
force and effect as if set forth verbatim.

28.     A police officer has probable cause if there is a "'fair probability' that the
individual [to be arrested] has either committed or intends to commit a crime." *Northrop v.*

*Trippett,* 265 F.3d 372, 379 (6th Cir. 2001), *quoting United States v. Sokolow,* 490 U.S. 1, 7, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989). "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243 n.13, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). "If there was probable cause for any of the charges made … then the arrest was supported by probable cause, and the claim for false arrest fails." *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir.1995).

29.     In this case, the Defendants had no probable cause to arrest or detain Viviana Bautista for Assault or Resisting Arrest.

On the Assault, the Deputy made a warrantless arrest without witnessing any crime. Additionally, Isamar Bautista never sought any charges or complained of an assault. It is apparent that the Deputy initially arrested  Ms.  Bautista for simply having an attitude with him, however, the First Amendment includes the freedom of individuals to verbally oppose or challenge police action, and is one of the principal characteristics by which we distinguish a free nation from a police state.

On the charge of Resisting Arrest, Ms.  Bautista never used or threatened to use force against the Deputy.  Surely, she did not comply with his verbal command to get her legs in the car, but she did not use any force against the officer in doing so.  In other words, although she was being civilly disobedient, she was not criminally resisting her arrest, search, or transportation.

**B.   VIVIANA BAUTISTA - EXCESSIVE FORCE**

30.     The factual allegations contained in all of the paragraphs of this Complaint are hereby incorporated and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

31.     In this case Plaintiff's face, eyes, back, arms and legs were injured, and such injuries resulted directly and only from the use of force by Deputy Jose Gonzalez that was clearly excessive to the need; to wit:

a.      Deputy Jose Gonzalez willfully and maliciously pushed and threw Plaintiff out of her front door, off of her porch , and down to the ground, while the Plaintiff was hand-cuffed, despite having no basis to do so, directly causing physical injury and pain to Plaintiff's back, arms, and legs;

b.      Deputy Jose Gonzalez then willfully and maliciously applied pepper spay to the face and eyes of the Plaintiff while she was already hand-cuffed, despite having no basis to do so, directly causing sever pain to her facial area and eyes.  The Plaintiff was not posing any risk.  In the criminal trial of the Plaintiff, fellow Deputy David Gonzalez testified that he would not have applied pepper spray in the case and that the Deputies could have rather simply pulled the Plaintiff into the car.

32.     "Determining whether the force used to effect the particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the

countervailing governmental interest at stake." *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1870, 104 L.Ed.2d 433 (1989). In looking at all the facts and circumstances in this arrest, and in balancing the amount of force used against the need for force, Deputy Jose Hernandez's conduct and use of force against Plaintiff was objectively unreasonable and excessive.

## C. CRESENCIA BAUTISTA - EXCESSIVE FORCE

33. The factual allegations contained in all of the paragraphs of this Complaint are hereby incorporated and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

34. In this case Plaintiff's right arm was broken and left dangling, and such injuries resulted directly and only from the use of force by Deputy Jose Gonzalez that was clearly excessive to the need; to wit:

a. Deputy Jose Gonzalez, with both hands, willfully and maliciously pushed the 83 year old female out of his way, causing her to fall backwards and breaking her right arm, despite having no basis to do so. If the Deputy was trying to arrest the Plaintiff Guadalupe Bautista, the Deputy's need to push her out of his way to arrest Guadalupe Bautista is not objectively reasonable considering that Guadalupe Bautista was not causing a need to for the Deputy to so react. Guadalupe Bautista was already on the floor and

controlled by Deputy David Gonzalez.  Moreover, Plaintiff was simply

standing in her son's home watching what was happening, and did not ever

verbally or physically address the Deputies.  It appears that the Deputies, or

at least Deputy Jose Gonzalez, was simply conducting himself unlike a

peace officer; he was simply overly aggressive and malicious that day.

35.     "Determining whether the force used to effect the particular seizure is

'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and

quality of the intrusion on the individual's Fourth Amendment interests' against the

countervailing governmental interest at stake."  *Graham v. Connor*, 490 U.S. 386, 396,

109 S. Ct. 1865, 1870, 104 L.Ed.2d 433 (1989).  In looking at all the facts and

circumstances in this arrest, and in balancing the amount of force used against the need

for force, Deputy Jose Hernandez's conduct and use of force against Plaintiff was

objectively unreasonable and excessive.

### D.  GUADALUPE BAUTISTA - FALSE ARREST

36.     The factual allegations contained in all of the paragraphs of this Complaint

are hereby incorporated and re-alleged for all purposes and incorporated herein with the

same force and effect as if set forth verbatim.

37.     A police officer has probable cause if there is a "'fair probability' that the

individual [to be arrested] has either committed or intends to commit a crime." *Northrop*

*v. Trippett,* 265 F.3d 372, 379 (6th Cir. 2001), *quoting United States v. Sokolow,* 490 U.S.

1, 7, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989). "[P]robable cause requires only a

probability or substantial chance of criminal activity, not an actual showing of such

activity." *Illinois v. Gates*, 462 U.S. 213, 243 n.13, 103 S. Ct. 2317, 76 L. Ed. 2d 527

(1983). "If there was probable cause for any of the charges made … then the arrest was

supported by probable cause, and the claim for false arrest fails." *Wells v. Bonner*, 45

F.3d 90, 95 (5th Cir.1995).

    38.     In this case, the Defendants had no probable cause to arrest or detain

Guadalupe Bautista for Interfering with Public Duties or Resisting Arrest.

     On the charge of Interfering with Public Duties, the actual criminal complaint filed

in Court, alleged that the Plaintiff interfered with Deputy David Gonzalez.  This case was

dismissed later.  There is simply no evidence that Plaintiff ever addressed Deputy David

Gonzalez verbally or physically.  It appears that Deputy Jose Gonzalez made a

warrantless arrest when the Plaintiff merely put his hand on the said Deputy to ask why

his daughter was being mistreated.  Assuming arguendo that the Deputy was performing a

duty or exercising authority imposed or granted by law, the Plaintiff was not intentionally

or negligently interrupting, disrupting, impeding, or otherwise interfering with the

Deputy.  However, Plaintiff submits that the Deputies were  actually not performing a

public duty or exercising authority when they had already established themselves as

trespassers.  The Deputies violated the Plaintiff's right to be free from illegal searches and

seizures by barging into his home without a warrant, consent or exigent circumstances.

Page 13 of  23

As such, the Plaintiff was politely but persistently asking the trespassing Deputy, who had already stepped outside his authority, what was going on with his daughter Viviana.

On the charge of Resisting Arrest, Ms. Bautista never used or threatened to use force against the Deputies.   Upon simply asking what was going on with his daughter, he was thrown down, cuffed, pepper spayed and sat on before he knew what hit him.  From there, he went straight to the patrol unit and jail without incident.

### E.  GUADALUPE BAUTISTA - EXCESSIVE FORCE

39.     The factual allegations contained in all of the paragraphs of this Complaint are hereby incorporated and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

40.     In this case Plaintiff's face, eyes, and back were injured, and such injuries resulted directly and only from the use of force by Deputy Jose Gonzalez that was clearly excessive to the need; to wit:

a.      Deputy Jose Gonzalez willfully and maliciously applied pepper spray to the face and eyes of the Plaintiff and placed his knee and weight on the Plaintiff's back while Plaintiff was already hand-cuffed and under control of fellow Deputy David Gonzalez.  The 58 year old gray haired Plaintiff was not posing any risk of danger to the two younger and physically larger Deputies.

Moreover, in the criminal trial of the Plaintiff, fellow Deputy David Gonzalez agreed that he would not have applied pepper spray like Deputy Jose Gonzalez did in this case.

41.     "Determining whether the force used to effect the particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interest at stake." *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1870, 104 L.Ed.2d 433 (1989).  In looking at all the facts and circumstances in this arrest, and in balancing the amount of force used against the need for force, Deputy Jose Hernandez's conduct and use of force against Plaintiff was objectively unreasonable and excessive.

### F.  HERMELINDA BAUTISTA - FALSE ARREST

42.     The factual allegations contained in all of the paragraphs of this Complaint are hereby incorporated and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

43.     A police officer has probable cause if there is a "'fair probability' that the individual [to be arrested] has either committed or intends to commit a crime." *Northrop v. Trippett,* 265 F.3d 372, 379 (6th Cir. 2001), *quoting United States v. Sokolow,* 490 U.S. 1, 7, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989). "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v.*

*Gates*, 462 U.S. 213, 243 n.13, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). "If there was

probable cause for any of the charges made … then the arrest was supported by probable

cause, and the claim for false arrest fails." *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir.1995).

44.    In this case, the Defendants had no probable cause to arrest or detain

Hermelinda Bautista for Interfering with Public Duties.  Deputy Jose Gonzalez instructed

Deputy David Gonzalez to arrest the Plaintiff for Interfering with Public Duties when he saw

her near the patrol unit where her husband Guadalupe Bautista was detained.  She was only

trying to calm her husband, and was not intentionally or negligently interrupting, disrupting,

impeding, or otherwise interfering with the Deputies.  At one point, the Deputies described

the Plaintiff's conduct as perhaps she was trying to steal the patrol car, which shows the ease

with which the Deputies can falsely accuse.  In the end, after her release for emergency

medical treatment, the Deputies never followed through to re-arrest the Plaintiff for the

charge of Interfering, which supports the conclusion that there was never any probable to

begin with.

### H.  HERMELINDA BAUTISTA - EXCESSIVE FORCE

45.    The factual allegations contained in all of the paragraphs of this Complaint are

hereby incorporated and re-alleged for all purposes and incorporated herein with the same

force and effect as if set forth verbatim.

46.    In this case Plaintiff's arms were injured, and such injuries resulted directly and

only from the use of force by Deputy David Gonzalez that was clearly excessive to the need;

to wit:

a.   Deputy Jose Gonzalez willfully and maliciously ordered Deputy David Gonzalez to arrest the Plaintiff.  Deputy David Gonzalez then proceeded to arrest the Plaintiff by placing her arms behind her back with such force that the pain caused her to loose consciousness.  The 55 year female Plaintiff was not posing any risk of danger to the two younger and physically larger Deputies.

47.   "Determining whether the force used to effect the particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interest at stake." *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1870, 104 L.Ed.2d 433 (1989).  In looking at all the facts and circumstances in this arrest, and in balancing the amount of force used against the need for force, Deputy David Hernandez's conduct and use of force against Plaintiff was objectively unreasonable and excessive.

## I.  HIDALGO COUNTY SHERIFF'S OFFICE

48.   The factual allegations contained in all of the paragraphs of this Complaint are hereby incorporated and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

49.   The Hidalgo County Sheriff's Department has a policy and/or custom of

allowing its Deputies unlimited discretion in entering homes without consent or a warrant, arresting subjects without probable cause, arresting citizens who verbally challenge authority to arrest, and using pepper spray or otherwise needlessly injuring a non-resisting subject. Each of the policies delineated above was actually known, constructively known and/or ratified by the Defendant, and its policymakers, delegated to Sheriff and his designees. These policies, or lack thereof, and customs, whether written or unwritten, were promulgated with deliberate indifference to Plaintiff's rights under the United States Constitution.

50.     Moreover, the known and obvious consequence of these policies was that the Defendant's Deputies would be placed in recurring situations in which the constitutional violations described within this complaint would result. Accordingly, these policies also made it highly predictable that the particular violations alleged here, all of which were under color of law, would result.

51.     Additionally, said Defendant failed to adequately select, screen, educate, train, supervise or otherwise direct its deputies. Such failures and/or policies and customs were a direct and proximate cause of a violation of the constitutional department failed to train and supervise the individual defendants concerning constitutionally and civil rights of the Plaintiffs. Said actions amount to violations of the Fourth, Eighth, and Fourteenth Amendments of the Unites States Constitution. Specifically, the Defendant failed to train or adequately train the Deputies regarding:

(1) Ability of individuals verbally to oppose or challenge police action;

(2) Identifying suspects sufficiently to establish probable cause for a search or arrest;

(3) Searches and seizures of subjects who are not suspects or otherwise under arrest;

(4) Arresting a non-resisting subject without causing needless bodily injury;

(5) Entering into citizens' homes absent exigent circumstances and/or absent consent or a valid search warrant; and

(6) Inappropriate use of pepper spray.

## J.  HIDALGO COUNTY SHERIFF J.E. EDDIE GUERRA

52.     The factual allegations contained in all of the paragraphs of this Complaint are hereby incorporated and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

53.     Defendant Sheriff did not overtly or personally participate in the aforementioned offensive acts; however, Defendant is liable, as  a policy maker, because he permits the systematic maladministration  of the law.  Defendant was deliberately indifferent concerning the training and supervision of the aforementioned Deputies in that he failed to adequately  screen,  supervise  and  train  the  Defendant  Deputies  and  there  is  a  causal connection  between  these  violations  and  Plaintiffs'  constitutional  allegations  and  the Sheriff's  aforementioned  failures  amount  to    deliberate  indifference  to  Plaintiffs' constitutional rights.  The current screening, supervision, and training mechanisms utilized by the Hidalgo County Sheriff's Office are deficient and the Defendant knew or should have

known of the deficiencies and patterns and he failed to reasonably address the deficiencies.

## K.  HIDALGO COUNTY

54.    The factual allegations contained in all of the paragraphs of this Complaint are hereby incorporated and re-alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

55.    Hidalgo County has a policy and/or custom of allowing its Sheriff Deputies unlimited discretion in entering homes without consent or a warrant, arresting subjects without probable cause, arresting citizens who verbally challenge authority to arrest, and using  pepper spray or otherwise needlessly injuring a non-resisting subject.   Each of the policies delineated above was actually known, constructively known and/or ratified by the Defendant, and its policymakers, delegated to Sheriff and his designees. These policies, or lack thereof, and customs, whether written or unwritten, were promulgated with deliberate indifference to Plaintiff's rights under the United States Constitution.

56.    Moreover, the known and obvious consequence of these policies was that the Defendant's Deputies would be placed in recurring situations in which the constitutional violations described within this complaint would result. Accordingly, these policies also made it highly predictable that the particular violations alleged here, all of which were under color of law, would result.

57.    Additionally, said Defendant failed to adequately select, screen, educate, train,

supervise or otherwise direct its deputies.  Such failures and/or policies and customs were a direct and proximate cause of a violation of the constitutional department failed to train and supervise the individual defendants concerning constitutionally and civil rights of the Plaintiffs.  Said actions amount to violations of the Fourth, Eighth, and Fourteenth Amendments of the Unites States Constitution.  Specifically, the Defendant failed to train or adequately train the Deputies regarding:

(1) Ability of individuals verbally to oppose or challenge police action;

(2) Identifying suspects sufficiently to establish probable cause for a search or arrest;

(3) Searches and seizures of subjects who are not suspects or otherwise under arrest;

(4) Arresting a non-resisting subject without causing needless bodily injury;

(5) Entering into citizens' homes absent exigent circumstances and/or absent consent or a valid search warrant; and

(6) Inappropriate use of pepper spray.

## V.

## DAMAGES

58.    Plaintiffs sues for the following damages:

a.    Reasonable medical care and expenses in the past for CRESENCIA BAUTISTA and HERMELINDA BAUTISTA.;

b.    Physical pain and suffering in the past AS TO ALL PLAINTIFFS;

c.    Mental anguish in the past AS TO ALL PLAINTIFFS  ;

    d.    Past and pending expenses for bail and criminal defense as to VIVIANA BAUTISTA and GUADALUPE BAUTISTA

## VI.
## EXEMPLARY DAMAGES

59.    Plaintiffs would further show that the acts and omissions of Defendants complained of herein were committed with malice or reckless indifference to the protected rights of the Plaintiffs. In order to punish said Defendants for engaging in such unlawful conduct, and to deter such actions and/or omissions in the future, Plaintiffs also seek recovery from all Defendants for exemplary damages.

## VII.

## ATTORNEYS' FEES AND JURY DEMAND

60.    Plaintiff s are further entitled to receive reasonable attorneys' fees, paralegal fees and expert fees and costs pursuant to 42 U.S.C. § 1988. Plaintiffs respectfully demand that a jury be empaneled to hear this action.

## VIII.

## CONCLUSION

Plaintiffs respectfully urge that upon a final hearing of the cause, judgment be entered for the Plaintiffs against Defendants for damages in an amount within the jurisdictional limits of the Court; exemplary damages, together with interest as allowed by law; costs of court; and such other and further relief to which the Plaintiff may be entitled at law or in equity.

Respectfully submitted,

LAW OFFICE OF REYNALDO M. MERINO
1012 Martin Avenue, Suite B
McAllen, TX 78504
Tel: (956) 630-2000
Fax: (956) 618-2800
reymerino@msn.com


BY:   */s/ Reynaldo M.  Merino*
    Reynaldo M. Merino
    State Bar No. 13953250
    ATTORNEY FOR PLAINTIFFS